IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTOINE JONES,

      Plaintiff,                    No. CIV S-07-1022 MCE KJM P

   vs.

CALIFORNIA DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.              FINDINGS & RECOMMENDATIONS
_____/

      Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendant Tan denied him prompt medical treatment. Defendant Tan, the only defendant upon whom the court ordered service, has filed a motion for summary judgment.

I. <u>Summary Judgment Standards Under Rule 56</u>

      Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

////

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On January 17, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. Preliminary Matters

    A. Admissibility of Certain Evidence

Defendant Tan offers his own declaration and a series of medical records in support of his motion for summary judgment. He avers he has "personal knowledge of each of the matters as set forth below . . . except where I specify that my knowledge is based upon information and belief. . . ." Motion for Summary Judgment (MSJ), Declaration of Richard Tan (Tan Decl.) ¶ 1. He describes the records as those made in the normal course of business by himself and other members of the prison's medical staff. Id. ¶ 4. He then relies on a portion of the medical records prepared by the R.N. who initially evaluated plaintiff to describe plaintiff's condition when he was first brought to the clinic. Id. ¶ 7.

Plaintiff objects, arguing that because defendant admitted he had no memory of plaintiff or of the incident, the description is hearsay and is not properly before the court. Opposition (Opp'n) at 2 & Ex. B at 25 ¶ 25.[1] Indeed, the last interrogatory on which plaintiff relies asks, "Does the defendant remember the day and inmate the INCIDENT took place," and the answer was, "I do not remember the day or inmate/patient." Id. Plaintiff does not appear to challenge the admissibility of the records themselves, however. See Fed. R. Evid. 803(6); United States v. Hall, 419 F.3d 980 (9th Cir. 2005) (medical records are "classic exceptions to the hearsay rule"); In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994) (reliability of medical records). Even assuming the court cannot consider the nurse's description of plaintiff's symptoms for the truth of that description, the court may nevertheless rely on it to the extent it illuminates defendant's state of mind at the time he treated plaintiff. See Fed. R. Evid. 803; McEuin v. Crown Equipment Corp., 328 F.3d 1028, 1035 (9th Cir. 2003).

/////

/////

---

[1] Because this exhibit is comprised of many documents and is not paginated, the court relies on the page numbers assigned by the court's CM/ECF system.

B. Claims At Issue

Defendant argues he is entitled to summary judgment on plaintiff's claim of neglect and medical malpractice. MSJ at 5-6. Plaintiff's complaint does not clearly plead a pendent state-law malpractice claim, though he did type the word "neglect" next to the word "complaint" on the civil rights form. Complaint (Compl.) at 1. However, the court found that the complaint had only stated a claim under the civil rights act and ordered it served on that basis. See Docket No. 6. Because neither negligence nor medical malpractice state a claim under the civil rights act, the court's service order did not encompass such a cause of action. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

III. Facts

Around 8:00 a.m. on September 7, 2006, plaintiff, who was an inmate at California State Prison–Solano, was taken to the satellite clinic "on an emergency code" because his back "went out," producing pain and spasms. Opp'n, Declaration of Antoine L. Jones (Jones Decl.) ¶ 1.[2]

Plaintiff was evaluated by a nurse and his condition deemed to be "non-emergency." Tan Decl. ¶ 7 & Ex. A at 6.[3] He was "refer[red] to MD for further eval." MSJ, Ex. A at 6. According to standard procedures, a non-emergency patient who arrives at the clinic without a prescheduled appointment is seen after those with appointments. Tan Decl. ¶ 7. Accordingly, plaintiff remained on a gurney while defendant Tan treated those inmates with appointments. Jones Decl. ¶ 2; Tan Decl. ¶ 8. Defendant "looked [plaintiff] in the eyes on several occassions" [sic]. Around 12:30 p.m., plaintiff asked if defendant would see him next; defendant said no. Jones Decl. ¶ 2

/////

---

[2] Although plaintiff's declaration is not divided into numbered paragraphs, the court will refer to the paragraphs by their order in the document.

[3] See note 1 supra.

5

Dr. Tan saw plaintiff around 2:15 p.m. Jones Decl. ¶ 2; Tan Decl. ¶ 8. According to plaintiff, defendant Tan became angry when plaintiff said the stretching exercises Tan recommended were not working and called for a correctional officer to remove plaintiff, who returned to the waiting area on his own. Jones Decl. ¶ 2. Within two minutes, a nurse called his name and took him back into the clinic for an injection of the pain-killer toradol. Id. ¶ 3.

According to defendant Tan, he reviewed a prior MRI of plaintiff's back, noted a normal back exam without deformity or tender areas, prescribed an injection of toradol, renewed plaintiff's prescriptions for pain reliever and muscle relaxant and provided a one day lay-in. Tan Decl. ¶ 8 & Ex. A at 7, 9.

IV. Analysis

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

There is no Eighth Amendment violation if any delay in treatment is not harmful. Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985). However,

unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care. McGuckin, 974 F.2d at 1062.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

There is no dispute that it was a nurse, not defendant Tan, who conducted the initial evaluation of plaintiff and who determined that plaintiff's condition did not constitute a medical emergency. Moreover, there is no dispute that before defendant Tan actually met with plaintiff at 2:15 p.m., nothing had alerted him to anything that might suggest plaintiff's condition was more serious than the triage nurse had indicated. In his declaration, plaintiff says only that at 12:30 he asked Dr. Tan if he could be seen next; he does not say that he described his pain level or otherwise suggested that his condition was more severe than described by the nurse. Thus, to the extent plaintiff's claim rests on defendant Tan's delay in treating him, plaintiff has not shown Tan was aware of anything that might suggest plaintiff should be given priority over those with previously scheduled appointments. By following standard procedures and treating plaintiff after those with appointments, Dr. Tan did delay plaintiff's care. In light of Dr. Tan's reliance on the nurse's evaluation that plaintiff's case was not an emergency, however, the delay did not grow out of deliberate indifference to plaintiff's medical needs. Farmer v. Brennan, 511 U.S. 825, 837, 843 (1994) (official's liability for deliberate indifference to assault requires that official know of and disregard an "excessive risk"); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978) (discussing "requisite causal connection" in section 1983 cases between named defendant and claimed injury); Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff

1 | must allege facts, not simply conclusions, that show that an individual was personally involved in
2 | the deprivation of his civil rights.").

Plaintiff also alleges that defendant Tan became angry and called for correctional personnel to remove plaintiff from his office. Tan does not address this assertion. It is undisputed, however, that plaintiff did receive pain medication either directly after or concurrently with defendant's examination of him. Plaintiff's medical records show that it was defendant Tan who prescribed the medication. MSJ, Ex. A at 7, 9. Whether defendant Tan acted unprofessionally or not is not material to this action: what is material is that plaintiff ultimately received an examination and medication for his pain, treatment he does not challenge. Dr. Tan's attitude does not establish deliberate indifference when the evidence shows that plaintiff was treated in a way he apparently concedes to have been appropriate. <u>Sires v. Berman</u>, 834 F.2d 9, 12-13 (1st Cir. 1987) (no Eighth Amendment violation from nurse's rude behavior, particularly in light of fact she later assisted inmate with his medication). Defendant is entitled to summary judgment.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (docket no. 31) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

/////
/////
/////
/////
/////

shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 13, 2009.

_____
U.S. MAGISTRATE JUDGE

2

jone1022.57